UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOHN J. FUERTES                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:02-CV-197-S

FORD MOTOR COMPANY                                                 DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on defendant's motion for summary judgment (DN 112).

Plaintiff has responded (DN 120) and defendant has replied (DN 124).  For the reasons that follow,

the court will grant the motion.[1]

BACKGROUND

Plaintiff John J. Fuertes ("Fuertes") was employed by defendant Ford Motor Company

("Ford") in various manufacturing and maintenance engineering positions at different plants from

July 1977 until his termination in March 2005.  This action arises out of allegations that Ford

discriminated and retaliated against Fuertes during his tenure at Ford's Kentucky Truck Plant

("KTP") and continuing after his termination.[2]  Fuertes alleges that he was denied promotional and

career opportunities at KTP because of his national origin, and that Ford created a work environment

hostile to Hispanics.  Fuertes further alleges that Ford retaliated against him for complaining about

the unfair treatment and discrimination he experienced.

---

[1]Plaintiff's motion for leave to file a sur-reply (DN 125), to which defendant responded (DN 126), will be denied.  Plaintiff did not tender his proposed sur-reply with the motion for leave to file the same; nor did plaintiff identify any additional issues raised by defendant in its reply that merit further addressing.  Defendant's motion for summary judgment has been fully briefed and the court does not find that a sur-reply will be necessary to resolving the issues here.

[2]The court has limited the matters at issue in this case to events occurring after January 1997.  Accordingly, the court's recitation of the facts will reflect this limitation.  *See DN 46, Order dated August 18, 2004.*

Fuertes alleges that he was denied opportunities for promotions for which he was eligible in nine instances: June 2000, Stamping Area Manager; August 2000, Acting Excursion Paint Area Manager; November 2000, Manufacturing Planning Manager; January 2001, Super Duty Paint Area Manager; February 2001, Paint Area Manager, Louisville Assembly Plant; December 2002, Excursion Body Shop Area Manager; and 2003, Paint Area Manager; Final Assembly Area Manager; and Stamping Area Manager.

Fuertes alleges that he was denied these promotions based on his national origin.  In support of this contention, Fuertes, who is of Puerto Rican ancestry, alleges a number of discrete instances in which his Hispanic ethnicity was denigrated during his tenure at KTP.  For example, upon his transfer to KTP, Human Resources Associate Lisa Flaherty asked Fuertes who in his family was "Spanish."  When Fuertes asked why she wanted to know, she said it was "curiosity."  On another occasion, Fuertes and one other Hispanic engineer were the only two KTP employees asked to entertain some visiting employees from KTP's sister plant in Cautilan, Mexico.

Moreover, Fuertes alleges to have overheard a conversation in January 2000 between his then-supervisor, Chris Tallon ("Tallon"), Human Resources Manager Medford Lee, and Material Handling Manager Ed Martin where it was said that KTP's employees of direct Mexican descent were "cheap labor," and would "work for anything," and that they would "take our jobs."  Fuertes further alleges that at a meeting in June 1998 Plant Manager Gary Laden made a comment about getting information down "to the Garcias on the floor," which Fuertes found highly offensive. Fuertes alleges that despite complaining about the "Garcias" comment to Tallon and others, various

members of KTP management repeated the comment time and again in his presence.[3]

Ford asserts that it made promotional decisions involving Fuertes without regard to his national origin.  Ford asserts that it made promotional decisions by using its business judgment to choose the best candidate for each position from a qualified pool.  Ford asserts that the individuals it selected for the promotions in question were determined to be better suited than Fuertes for the positions.  Specifically, Ford asserts that Fuertes was not promoted because he suffered from performance issues relating to communication, leadership, interpersonal, and managerial skills.

Ford argues that a handful of isolated comments allegedly made by KTP management over a number of years does not support Fuertes' discrimination and harassment claims in this lawsuit.  Ford notes that none of the comments about which Fuertes complains were directed at him.  Moreover, Ford asserts that Fuertes was familiar with the reporting requirements of Ford's anti-harassment policy and that Fuertes failed to ever utilize the proper procedures to report the alleged comments.  Fuertes asserts that whether he utilized every company procedure or not, he continually voiced his complaints and they were ignored.

Fuertes alleges that Ford retaliated against him for complaining about the unfair treatment and discrimination that he experienced.  In October 1997, Fuertes wrote a letter to Ford Personnel Relations associate Gail Shirey ("Shirey") requesting that his: (1) official title and salary grade be changed; (2) past performance reviews be upgraded; and (3) past merit raises be adjusted upward based on the job duties he had performed beyond those normally expected of an individual in his position at KTP.  Fuertes alleges that his superiors retaliated against him when they found out about

---

[3]Ford notes that the phrase is an allusion to *A Message to Garcia*, a well-known inspirational essay about an incident during the Spanish-American War.

-3-

the letter.  Fuertes alleges that he was demoted in April 1998 in retaliation for the letter.  Ford asserts

that Fuertes was demoted because he got into a physical altercation with one of his subordinates.

In April 2001, Fuertes filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") alleging those acts of discrimination and retaliation detailed

above.  In May 2001, Fuertes notified Ford that he planned to take a medical leave of absence from

work.  Fuertes went on leave as planned but he failed to submit the required support paperwork to

Ford.  Fuertes alleges that he requested the paperwork be sent to him but that he never received it.

After Fuertes had been absent from work for thirty days, Ford sent a registered letter to

Fuertes' home notifying him that if he did not respond with the paperwork certifying his medical

leave within five working days then he would be terminated.  Fuertes alleges that he did not receive

the letter because he was out of town when it arrived; and that his daughter received the letter but

neglected to tell him about it.  In July 2001, based on Fuertes' failure to respond, Ford sent a second

letter to Fuertes indicating that he was being processed as a voluntary quit, effective retroactively

to May 22.

When Fuertes returned home and discovered the letters from Ford, he submitted the

necessary paperwork.  Thereafter, Ford "rescinded" Fuertes' termination; it was never processed.

Fuertes was never removed from the Salaried Roll; never lost any pay, benefits, or time in grade;

and was allowed to return to work after his medical leave.  Fuertes filed a second charge with the

EEOC in July 2001 complaining that he had been terminated in retaliation for filing the earlier

EEOC complaint in April.  He subsequently returned to work at KTP.

Fuertes alleges that Ford retaliated against him when he returned to work as a result of the

circumstances surrounding his medical leave.  Fuertes alleges that Ford took away his parking space;

removed the nameplate from his office door; excluded him from company photographs; no longer allowed him to participate in the Temporary Vehicle Evaluation Program; and no longer allowed him to use a dictaphone to take notes at work. Fuertes further alleges that Ford retaliated against him by eliminating his position as Body Maintenance Engineer, Excursion M.E. and transferring him to M.E. Manager in Stamping.

The EEOC issued a Right-to-Sue notice on Fuertes' April and July 2001 Charges, and Fuertes filed this lawsuit in April 2002. In March 2005, Ford terminated Fuertes for poor performance. Fuertes alleges that his superiors retaliated against him for filing the EEOC complaints and this lawsuit by giving him poor performance reviews, which precipitated his termination.

In support of his contention, Fuertes points out that the performance rating he received of "Improvement Required" on his October 2001 Interim Review – his first review after having filed the EEOC complaints – was the first unsatisfactory review he ever received at KTP. Similarly, Fuertes points out that he received a rating of Improvement Required on his December 2002 Year-End review – his first review after having filed this lawsuit. That review was conducted by Fuertes' then-supervisor, Glenn Fox ("Fox").[4] Fuertes alleges that Fox was hostile towards him and discriminated against him. Fuertes further alleges that Fox refused to counsel him on ways to improve his performance and deal more effectively with subordinates, Union officials, and supervisors.

Ford asserts that all of Fuertes' performance reviews were based purely on Fuertes'

---

[4]Ford Personnel Relations later changed Fuertes' rating on this review from Improvement Required to "Achiever."

performance.  Ford refutes the allegation that it retaliated against Fuertes by giving him poor performance reviews, noting that Fuertes received a satisfactory "Achiever" rating on his first Year-End review after having filed the Complaints.  Ford further notes that in conjunction with Fuertes' 2002 Year-End review he was placed on a Performance Enhancement Plan, a "forward-looking document that sets out a concrete plan for improving employee performance."  Fuertes remained on Performance Enhancement Plans for the duration of his tenure at KTP.  Ford asserts that despite the Performance Enhancement Plans and repeated counseling on areas that needed improvement, Fuertes' performance did not improve.  Fuertes received Year-End  Improvement Required ratings in 2003 and 2004.[5]

Fuertes alleges that Ford discriminated against him by denying him the opportunity to transfer out of Fox's department.  Fuertes requested to be transferred.  Processes exist for an employee who has a poor relationship with his supervisor to be transferred.  Fuertes' request to be transferred was denied.  Fuertes alleges that Ford has agreed to such transfers involving non-Hispanic employees.  Ford asserts that Fuertes' request to be transferred was reviewed and denied because KTP typically does not transfer employees with performance issues to a different department until performance improves; otherwise, the transferee department risks taking on the problems associated with a poor-performing employee.   Ford further asserts that Fuertes' performance problems extended beyond any relationship issues with Fox.

Because 2004 was Fuertes' second Year-End Improvement Required rating, Ford's Salaried Personnel Representative Chuck Hoffman ("Hoffman") reviewed Fox's evaluation and was present when Fox conducted Fuertes' final review.  Fox recommended that Fuertes be terminated and

---

[5]These reviews were conducted by Fox.

Hoffman agreed.  Gary Laden and Human Resources Manager Steve Wiseman reviewed the termination request.  Kathleen Hurt of Ford's Personnel Relations Office in Michigan was involved in the final decision-making process.  Fuertes was terminated on March 11, 2005.  Because Fuertes was separated from Ford under the company's Career Transition Program, he was not eligible to appeal his termination through Ford's Peer Review Process.

Fuertes filed a third EEOC charge in March 2006 alleging that Ford terminated him in retaliation for filing the previous EEOC complaints and this lawsuit.  Fuertes further alleged in the March complaint that Ford retaliated against him by interfering with his efforts to gain new employment.

Fuertes alleges that Chris Tallon, his former supervisor at KTP, interfered with his candidacy for a position with an Indiana engineering staffing company.  At the time of the alleged interference, Tallon was a Toyota employee involved in hiring contractors for Toyota's plant in Indiana.  Fuertes alleges that Tallon interfered with his candidacy for the position because of Tallon's knowledge of this litigation.  Ford asserts that Toyota's decision not to hire Ford is not attributable to any improper conduct by Ford.

Fuertes further alleges that Ford interfered with his candidacy for a position with Mayflower Vehicle Systems in Ohio.  Fuertes alleges that a "Ford Engineer Representative" became aware of his candidacy for the position with Mayflower, contacted Mayflower, and defamed him, whereupon Mayflower cut off all contact.  Ford asserts that Mayflower's records indicate it chose not to hire Fuertes for reasons unrelated to what Ford characterizes as an alleged unfavorable job reference.

The EEOC issued a Right-to-Sue notice on Fuertes' March 2006 Charge.  Fuertes

subsequently filed a Revised Third Amended Complaint. Fuertes filed this employment discrimination suit pursuant to 42 U.S.C. § 2000e, et seq. and state law. Fuertes specifically alleges unlawful employment discrimination; unlawful retaliation; hostile environment; wrongful termination: retaliatory discharge; unlawful retaliation: interference with subsequent employment opportunities; and interference with prospective advantage.[6]

The court has jurisdiction over the claims in this action arising under Title VII of the Civil Rights Act of 1964 pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f). The court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute also must be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute

---

[6] In his response to Ford's motion for summary judgment, Fuertes concedes that his claims for age discrimination and infliction of emotional distress should be dismissed. Accordingly, those claims will be dismissed.

at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Fuertes alleges a number of unlawful employment practices on the part of Ford, including several discrete acts of discrimination, failure to promote, retaliation, demotion, harassment, termination, disparate treatment, denial of transfer, denial of appeal, and hostile work environment.

In Kentucky, a "deferral state" under Section 2000e-5(e)(1) of Title VII of the Civil Rights Act of 1964, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged occurrence of an unlawful employment practice.  Otherwise, a claim for the alleged act is time barred.  See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, L. Ed. 2d 106 (2002); *Algie v. N. Ky. Univ.*, 2007 WL 2137781 (E.D. Ky. July 23, 2007).  Fuertes filed charges of discrimination with the EEOC on: (1) April 6, 2001; (2) July 10, 2001; and (3) March 10, 2006. Therefore, only those acts that occurred from June 10, 2000 to July 10, 2001, and from May 15, 2005 to March 10, 2006, are actionable.[7]  Those acts alleged to have occurred from July 11, 2001 to May 14, 2005 thus are not actionable.  Accordingly, the court is without jurisdiction to consider Fuertes' causes of action for wrongful termination: retaliatory discharge and all disparate treatment and retaliation claims based on demotion, deprivation of certain benefits and departmental transfer following the June 2001 termination, unfair performance reviews, denial of transfer, or denial of

---

[7]The period from June 10, 2000 to July 10, 2001 comprises the 300 days prior to and including the filing of the first EEOC charge on April 6, 2001 and the additional 95-day period forward to and including the filing of the second EEOC charge on July 10, 2001.
     The period from May 15, 2005 to March 10, 2006 comprises the 300 days prior to and including the filing of the third EEOC charge on March 10, 2006.

appeal.  These claims must be dismissed as time barred.  The court will consider those of Fuertes' disparate treatment, retaliation, hostile environment, and interference claims timely filed with the EEOC.

Fuertes alleges national origin discrimination based on Ford's failure to promote.[8]  Because Fuertes has failed to introduce direct evidence of national origin discrimination, he must establish a prima facie case of employment discrimination by a preponderance of the circumstantial evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  To establish a prima facie case, Fuertes must prove that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.  *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) (internal citation omitted).

If Fuertes can establish a prima facie case, Ford must articulate a legitimate, non-discriminatory reason for its employment decisions.  *McDonnell Douglas Corp.* at 802-03.  If Ford can articulate a reason, the presumption of discrimination raised by the prima facie case is rebutted. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).  If the prima facie case is rebutted, Fuertes must show that Ford's articulated reason was mere pretext for discrimination.  *McDonnell Douglas Corp.* at 804.

---

[8]Four of Fuertes' allegations of failure to promote are actionable: August 2000, Acting Excursion Paint Area Manager; November 2000, Manufacturing Planning Manager; January 2001, Super Duty Paint Area Manager; and February 2001, Paint Area Manager, Louisville Assembly Plant.

The record indicates that the "June 2000, Stamping Area Manager" promotion that Fuertes alleges to have been denied predates June 10, 2000 and thus is not actionable.  *See Plaintiff's Response to Defendant's First Interrogatories, Interrogatory 10.*

It is undisputed that Fuertes, as Hispanic, is a member of a protected class.  It is further undisputed that Fuertes suffered adverse employment actions to the extent that he did not receive certain promotions.

Fuertes has established that he was at least qualified for candidacy for promotion to certain positions he sought from August 2000 to February 2001 based on his managerial position and performance assessments dating from 1997.  While Ford argues that repeated performance problems, negative reviews, and poor leadership skills hampered Fuertes' promotional advancement later in his tenure at KTP, Ford does not argue the same point equally regarding the promotions that Fuertes alleges to have been denied prior to his filing the first EEOC charge in April 2001.  A review of the record confirms that criticism of Fuertes' performance is largely, though not altogether, absent from Fuertes' performance reviews prior to October 2001.  *Response to Motion for Summary Judgment*, Exhibit O.

Fuertes alleges that he was treated differently than similarly-situated, non-Hispanic employees in that, "[W]hile white male employees received promotions, I have been denied the opportunity for any promotional opportunity."  *Complaint*, ¶ 20.  Fuertes has failed to support this allegation with evidence but Ford does not deny that the individuals selected for promotion in Fuertes' stead were non-Hispanic.  Therefore, Fuertes has established a prima facie case of employment discrimination.

However, Ford asserts that it had a legitimate, non-discriminatory reason for declining to promote Fuertes based on its business decision to promote other qualified and experienced candidates.  Ford asserts that it promoted individuals who it determined to be the best candidates for positions based on their success in current job positions, ability to assume greater responsibility,

performance ratings, leadership capabilities and overall experience.

While these criteria would not seem to have disqualified Fuertes from promotional consideration based on his employment record, there is no evidence to suggest that Fuertes would have been entitled to a promotion based on these criteria, either. From 1997 to 2000, Fuertes received Year-End Performance Ratings of "Fully Meets Requirements/Expectations" and generally positive assessments of his leadership behavior. By 1997, Fuertes had twenty years of experience working at Ford. However, Ford's Performance Management Rating Scale indicates that "[i]t is expected most employees will attain [the Fully Meets] rating."[9] Fuertes' performance reviews from the relevant period indicate needed improvement in interpersonal and management skills.

The court does not decide whether Ford ought to have promoted Fuertes; only whether Ford's stated reason for not promoting Fuertes was legitimate and non-discriminatory. It is clear that Ford could only have selected one of any number of qualified candidates for promotion per available position. Ford has articulated that it determined Fuertes to be less qualified for promotion than the candidates who were ultimately selected to fill the positions in question. Thus Ford has articulated a legitimate, non-discriminatory reason for declining to promote Fuertes.

Fuertes has failed to present any evidence that Ford's reason for declining to promote him was pretext for discrimination. Fuertes has failed to show that Ford's reason for declining to promote him were false. For example, Fuertes has failed to show that he was objectively more qualified than the non-Hispanic candidates who were selected for promotion. Of course, that the employees who were promoted were not Hispanic is no evidence of discrimination whatsoever. Fuertes has failed to show that he was denied promotion *because* he was Hispanic. Accordingly,

---

[9] The top performance rating is "Exceeds Requirements/Expectations."

Fuertes' national origin discrimination claim based on Ford's failure to promote must be dismissed.

Fuertes alleges unlawful retaliation also based on failure to promote,[10] as well as based on his June 2001 "termination," and interference with subsequent employment opportunities. As above, Fuertes must establish a prima facie case of retaliation. To do so, Fuertes must prove that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to Ford; (3) thereafter, Ford took an employment action adverse to Fuertes; and (4) there was a causal connection between the protected activity and the adverse employment action. See *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th. Cir. 2008). If Fuertes can establish a prima facie case, Ford must articulate a legitimate, non-discriminatory reason for its employment decision. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If Ford can rebut Fuertes' case, Fuertes must show that Ford's reason was pretextual. *Id.*

Fuertes claims that he was denied promotions in retaliation for the letter he wrote to Gail Shirey in October 1997 requesting alterations to his employment record and increases in his merit pay. Fuertes' letter to Shirey may be said to have constituted opposition to allegedly unlawful discrimination under Title VII. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000). It is undisputed that Ford, and more specifically, Gary Laden and other of Fuertes' supervisors alleged to have retaliated against Fuertes for the letter, knew about the letter. It is further undisputed that Fuertes suffered adverse employment actions to the extent that he did not receive certain promotions. However, Fuertes has failed to establish any causal connection between his letter to Shirey in 1997 and the promotions he alleges to have been denied starting in August 2000. Fuertes has failed to show evidence of retaliatory animus. As such, any inference of

---

[10]The same four allegations of failure to promote are implicated here as above.

retaliatory causation is precluded by the almost three-year time lapse between Fuertes' letter and the promotions he alleges to have been denied. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 n.1 (6th Cir. May 21, 1997).  Fuertes has failed to establish a prima facie case of retaliation based on failure to promote.  Even if Fuertes were able to make a prima facie case, Ford has articulated a legitimate, non-discriminatory reason for declining to promote Fuertes.  Fuertes has failed to present any evidence that the reason was pretext for retaliation.

Fuertes claims that he was terminated in June 2001 in retaliation for filing a charge of discrimination with the EEOC in April 2001.  The April EEOC complaint constitutes opposition to allegedly unlawful discrimination under Title VII.  It is undisputed that Ford knew about the complaint.  It is undisputed that Ford indicated to Fuertes that he had been processed as a voluntary quit, i.e. terminated, which constitutes an adverse employment action.  "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action.  Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen* at 563 (internal citations omitted).  In contrast to the significant passage of time between Fuertes' letter to Shirey and his allegations of failure to promote beginning in 2000, the closeness in time between Fuertes' filing of the April 2001 EEOC complaint and his June termination, coupled with Ford's knowledge of the complaint, is sufficient to create an inference of causation. *Parnell* at 2.  "The burden of establishing a prima facie case in a retaliation

-14-

action is not onerous, but one easily met." *Nguyen* at 563 (internal citation omitted). Despite the fact that Fuertes' termination was never fully effectuated and his conditions of employment were ultimately left in tact, Fuertes has established a prima facie case of retaliation based on his June 2001 termination.

Ford has articulated a legitimate, non-discriminatory reason for terminating Fuertes in that Fuertes failed to timely submit the required medical paperwork to support his leave of absence and further did not respond to Ford's five-day quit notice. Ford notified Fuertes of his failure to comply with the requirements for medical leave, provided him an opportunity to remedy the defect, and communicated what the consequences would be for his failure to do so. By every indication, Ford terminated Fuertes based on his failure to respond to the quit-notice. Fuertes has failed to provide any evidence that Ford's reason for terminating him was mere pretext for retaliating against him for having filed the April 2001 EEOC complaint. That Fuertes' termination was never processed and he was allowed to return to work after his medical leave without disadvantage is further counterevidence of pretext.

Fuertes claims that Ford interfered with his efforts to gain new employment after he was terminated in retaliation for filing charges against Ford with the EEOC and this lawsuit. Again, Fuertes has failed to establish any causal connection between the filing of the EEOC complaints in 2001[11] or this lawsuit in 2002 and Ford's alleged interference with his efforts to gain new employment after termination in 2006. Fuertes has failed to show evidence of retaliatory animus. The temporal distance between Fuertes' complaints and the interference he alleges to have

---

[11]Fuertes' March 2006 EEOC complaint was filed after Ford's alleged interference with Fuertes' employment opportunities, so it is irrelevant here.

encountered forbids any inference of retaliatory causation.  Moreover, Fuertes has shown no evidence that Ford improperly interfered with his efforts to gain new employment, or even knew about those efforts.  Fuertes has failed to establish a prima facie case of retaliation based on interference with subsequent employment opportunities.  Fuertes' several claims of unlawful retaliation must be dismissed.

As Fuertes has failed to show evidence that Ford improperly interfered with his efforts to gain new employment, Fuertes' claim for interference with prospective advantage also must be dismissed.  To prevail on a claim for interference with prospective advantage, a plaintiff must show that: (1) a defendant intentionally interfered with plaintiff's business prospects; (2) this interference caused plaintiff to lose profits to which he would have otherwise been entitled; and (3) the interference must have been intentional and must have occurred by the use of improper means.  See *Cheatham v. Paisano Publ'ns, Inc.*, 891 F. Supp. 381, 387 (W.D. Ky. 1995).  Fuertes has failed even *to allege* any of these elements with respect to Ford's role in his candidacy for the Toyota job; he has failed to prove any of them with respect to the Mayflower job.

Fuertes alleges that Ford created a work environment hostile to Hispanics.  To establish a hostile work environment claim, Fuertes must allege conduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560, 562 (6th Cir. 1999) (internal citation omitted).  Whether conduct is so severe or pervasive such that it creates a hostile work environment is a question of the totality of the circumstances.  "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

-16-

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).  The test is whether a reasonable person would find the work environment objectively hostile.  *Id.* at 21.

To support his hostile environment claim, Fuertes asserts that he was asked about his "Spanish" family members; was singled out to take visiting Mexican employees to dinner; overheard upper-level members of management make disparaging comments about KTP's Mexican employees; and repeatedly suffered a comment about getting information down "to the Garcias on the floor."

While Fuertes may have subjectively regarded the work environment at KTP as hostile towards Hispanics, the court finds nothing objectively hostile about Lisa Flaherty having asked Fuertes about his family or the fact that Fuertes was asked to accompany Ford employees from Cautilan to dinner.  Further, while the comments about Mexican employees that Fuertes alleges to have overheard may be contemptible, for the purposes of a hostile environment claim they amount to "mere offensive utterances," which are not actionable under Title VII.  *See Clay v. United Parcel Serv.*, 501 F.3d 695, 708 (6th Cir. 2007).  Likewise, the "Garcias" comment cannot be said to reveal animosity or hint at enmity such that the words would come across as threatening, intimidating, or insulting to a reasonable person.  *See Taylor v. United Parcel Serv.*, No. 3:06-CV-293-H, 2008 WL 115019, at *3 (W.D. Ky. Jan. 10, 2008).  Viewed in sum, Fuertes' allegations do not nearly approximate conduct so severe or pervasive that it gives rise to a claim for hostile work environment.

Therefore, Fuertes' hostile environment claim must be dismissed.

## CONCLUSION

Because the court finds that there are no genuine issues of fact and that defendant is entitled

to summary judgment as a matter of law, defendant's motion for summary judgment will be granted.

A separate order will be entered herein this date in accordance with this opinion.